IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| KRISTINE DEE HILGART, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>CAROLYN W. COLVIN,[1] )<br>Commissioner of Social Security, )<br>)<br>Defendant. ) | No. 6:12-03022-DGK-SSA |

### ORDER AFFIRMING COMMISSIONER'S DECISION

Plaintiff Kristine Hilgart seeks judicial review of the Commissioner of Social Security's denial of her applications for disability insurance benefits under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401, *et. seq.*, and supplemental security income ("SSI") based on disability under Title XVI of the Act, 42 U.S.C. §§ 1381 *et. seq.* Plaintiff alleges she became disabled on December 21, 2009 when she injured her back while working as a nurse. The ALJ found that although Plaintiff suffered from severe back impairments, she retained the residual functional capacity ("RFC") to perform some sedentary work.

After careful review, the Court holds the ALJ's decision is supported by substantial evidence on the record as a whole, and the Commissioner's decision is AFFIRMED.

**Factual and Procedural Background**

The medical record is summarized in the parties' briefs and is repeated here only to the extent necessary.

Plaintiff filed her application for disability insurance benefits on January 11, 2010 and her application for SSI benefits on January 21, 2010. The Commissioner denied her applications

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Federal Rule of Civil Procedure 25(d), she is substituted for Michael J. Astrue as the defendant in this suit.

at the initial claim level on April 30, 2010. On May 6, 2011, following a hearing, the ALJ found Plaintiff was not disabled as defined in the Act. The Appeals Council denied Plaintiff's request for review on November 23, 2011, leaving the ALJ's decision as the Commissioner's final decision. Plaintiff has exhausted all of her administrative remedies and judicial review is now appropriate under 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3).

## Standard of Review

A federal court's review of the Commissioner of Social Security's decision to deny disability benefits is limited to determining whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000). Substantial evidence is less than a preponderance, but enough evidence that a reasonable mind would find it sufficient to support the Commissioner's conclusion. *Id.* In making this assessment, the court considers evidence that detracts from the Commissioner's decision, as well as evidence that supports it. *Id.* The court may not reverse the Commissioner's decision as long as substantial evidence in the records supports this decision, even if substantial evidence in the record also supports a different result, or if the court might have decided the case differently were it the initial finder of fact. *Id.*

## Analysis

Generally, a federal court's review of the Commissioner's decision to deny an application for benefits is restricted to determining whether the Commissioner's decision is consistent with the Act, the regulations, and applicable case law, and whether the findings of fact are supported by substantial evidence on the record as a whole. In determining whether a claimant is disabled, that is, unable to engage in any substantial gainful activity by reason of a medically determinable impairment that has lasted or can be expected to last for a continuous period of not less than 12

2

months, 42 U.S.C. § 423(d), the Commissioner follows a five-step sequential evaluation process.[2]

Plaintiff contends the ALJ erred by: (1) not finding that her fibromyositis, depression, and anxiety were severe impairments; (2) failing to develop the record with respect to her physical impairments; (3) not providing a "narrative bridge" explaining the RFC determination; and (4) improperly analyzing the evidence concerning her pain.

**A.    The ALJ correctly found Plaintiff's fibromyositis, depression, and anxiety were not severe impairments.**

At step two of the sequential evaluation process, the ALJ determines whether the claimant has a severe impairment or combination of impairments that lasted or is expected to last for at least twelve months. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). The claimant bears the burden of establishing that her impairment is severe. *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). A medically determinable impairment is "severe" if it more than minimally affects the claimant's ability to perform basic work activities. The impairment "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques . . . and must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [the claimant's]

---

[2] The five-step process is as follows: First, the Commissioner determines if the applicant is currently engaged in substantial gainful activity. If so, he is not disabled; if not, the inquiry continues. At step two the Commissioner determines if the applicant has a "severe medically determinable physical or mental impairment" or a combination of impairments. If so, and they meet the durational requirement of having lasted or being expected to last for a continuous 12-month period, the inquiry continues; if not, the applicant is considered not disabled. At step three the Commissioner considers whether the impairment is one of specific listing of impairments in Appendix 1 of 20 C.F.R. § 404.1520. If so, the applicant is considered disabled; if not, the inquiry continues. At step four the Commissioner considers if the applicant's residual functional capacity ("RFC") allows the applicant to perform past relevant work. If so, the applicant is not disabled; if not, the inquiry continues. At step five the Commissioner considers whether, in light of the applicant's age, education and work experience, the applicant can perform any other kind of work. 20 C.F.R. § 404.1520(a)(4)(i)-(v) (2009); *King v. Astrue*, 564 F.3d 978, 979 n.2 (8th Cir. 2009). Through step four of the analysis the claimant bears the burden of showing that he is disabled. After the analysis reaches step five, the burden shifts to the Commissioner to show that there are other jobs in the economy that the claimant can perform. *King*, 564 F.3d at 979 n.2.

statement of symptoms . . ." *Martise v. Astrue,* 641 F.3d 909, 923 (8th Cir. 2011). Although severity is not an onerous requirement, it is also not a toothless standard. *Kirby*, 500 F.3d at 708.

Plaintiff argues that the ALJ erred at step two by failing to find her fibromyositis,[3] depression, and anxiety were severe impairments. Plaintiff contends the ALJ failed to discuss her fibromyositis and also erred in finding her depression and anxiety did not impose more than minimal limitations on her ability to work.

As an initial mater, the Court notes that Plaintiff's application did not allege disability on the basis of fibromyositis, depression, or anxiety. Rather, it claimed disability based on spinal stenosis, degenerative disc disease, and a torn disc. R. at 135. This weighs against holding the ALJ erred here. *Dunahoo v. Apfel*, 241 F.3d 1033, 1039 (8th Cir. 2001) ("The fact that [claimant] did not allege depression in her application for disability benefits is significant, even if the evidence of depression was later developed.")

Additionally, Plaintiff is mistaken in suggesting that the ALJ did not consider whether her alleged fibromyositis was a severe impairment. Although the ALJ did not write the word "fibromyositis" in his opinion, the fact that he noted and discussed the treatment records diagnosing Plaintiff's fibromyositis evidences that he considered it. R. at 16-18, 273, 396-98, 425-33, 518-20. The ALJ also relied on portions of these treatment records in formulating Plaintiff's RFC. Furthermore, the ALJ did not need to explicitly find that Plaintiff's fibromyositis was a non-severe impairment since there is no credible evidence on the record suggesting it had more than a minimal affect on her ability to work.

With respect to Plaintiff's depression and anxiety, the ALJ considered the evidence relating to these impairments and properly concluded that it failed to establish that those

---

[3] Fibromyositis is a "[c]hronic inflammation of a muscle with an overgrowth, or hyperplasia, of the connective tissue." PDR Medical Dictionary 649 (1st ed. 1995).

symptoms limited her ability to work. R. at 12-13. While Plaintiff's primary care physician, Dr. David W. Dale, D.O., prescribed her medication for anxiety and depression, R. at 13, 34-35, 396-98, 425-33, 518-20, a prescription by itself does not denote that an impairment is "severe" under the regulations. *See Page v. Astrue*, 484 F.3d 1040, 1043-44 (8th Cir. 2007). On the contrary, where, as here, an impairment can be controlled by medication, the prescription weighs against a finding of disability. *Davidson v. Astrue*, 578 F.3d 838, 846 (8th Cir. 2009). The Court also notes that Plaintiff testified she was not currently receiving mental health treatment. R. at 13, 34-35. This supports the ALJ's finding that Plaintiff's anxiety and depression were not severe impairments. *Page*, 484 F.3d at 1043-44.

In deciding that these impairments were not severe, the ALJ also properly considered four functional areas set forth in the regulations: activities of daily living; social functioning; concentration, persistence, and pace; and episodes of decompensation. R. at 12-13; 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3). Under the regulations, if an ALJ finds that a claimant has no limitations in the first three categories, or such limitations are mild, and the claimant has no episodes of decompensation, the ALJ will generally find the mental impairment is not severe. 20 C.F.R. §§ 404.1520a(d)(1), 416.920a(d)(1). After considering the entire record, the ALJ determined that Plaintiff had no limitations in activities of daily living; no limitations in social functioning; no limitations in concentration; persistence, and pace; and no episodes of decompensation. R. at 13. Thus, the ALJ did not err in concluding Plaintiff did not suffer from a severe mental impairment.

**B.     The ALJ did not fail to develop the record.**

Next, Plaintiff contends that after observing that the medical evidence was somewhat inconsistent, the ALJ breached his duty to develop the record by not ordering a consultative examination or re-contacting medical sources. The reports noted by the ALJ, however, did not

5

trigger a duty to order a consultative examination or to re-contact a medical source; rather, they highlighted inconsistencies in the record which made Plaintiff's claims less plausible.

At the time the ALJ ruled on Plaintiff's application,[4] the ALJ was required to re-contact a medical source only if the source's information was inadequate to determine disability. 20 C.F.R. § 404.1512(e). Similarly, the ALJ could order a consultative examination when an inconsistency in the record required it, or when the record was insufficient to support a decision. 20 C.F.R. §§ 404.1519a, 416.919a(b). But the duty to develop the record did not require the ALJ to obtain medical evidence supporting a claimant's allegations. On the contrary, where the record contains differing medical opinions, it is the ALJ's responsibility to resolve conflicts between them. *Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001).

Thus, the ALJ was entitled to consider the fact that the physical examination results were somewhat inconsistent and that Plaintiff had reported different symptoms at different times. The ALJ was not required to re-contact any medical sources or order a consultative examination because there was sufficient evidence on the record to determine whether Plaintiff was disabled. This evidence included physical examination results, diagnostic imaging studies, and medical opinion evidence from Dr. Truett Swaim, M.D., who conducted an independent medical examination of the Plaintiff, and Dr. Dale. Consequently, the ALJ did not breach his duty to develop the record.

**C.      The ALJ adequately explained the relationship between the RFC and the medical evidence.**

Plaintiff also contends this case should be remanded because the ALJ failed to provide a "narrative bridge" between the medical evidence and the RFC assessment. Social Security Ruling ("SSR") 96-8p provides that the ALJ's RFC assessment must include a narrative

---

[4] 20 C.F.R. § 404.1512(e) was revised on February 23, 2012, to modify the requirement concerning re-contacting medical sources.

discussion describing how the evidence supports each conclusion, citing specific evidence. But SSR 96-8p does not require the ALJ to follow each RFC limitation with a list of specific evidence on which the ALJ relied. Indeed, such a requirement is inconsistent with the standard of review here which mandates the court's decision be based on "all of the relevant evidence." *McKinney*, 228 F.3d at 863. Such a requirement would also result in ALJ's writing overly long decisions containing duplicative discussions of the same evidence in multiple sections.

The narrative bridge here is more than adequate. Read as a whole, it is clear that in formulating the RFC the ALJ considered the evidence relating to Plaintiff's depression and anxiety symptoms. The ALJ also did not err in finding Plaintiff's allegations of disabling physical symptoms were not fully credible because they were inconsistent with the record evidence as a whole. After assessing the evidence, the ALJ properly formulated Plaintiff's RFC and imposed significant limitations to account for Plaintiff's credible limitations.

The Court finds no merit to Plaintiff's argument that the ALJ failed to sufficiently discuss how he weighed Dr. Swaim's opinion, that is, why he only gave this opinion "some" weight. In the middle of the ALJ's lengthy four page analysis of the RFC assessment, R. at 14-18, he thoroughly discussed Dr. Swaim's independent medical examination. R. at 16. The ALJ wrote he gave Dr. Swaim's opinion only "some" weight because Dr. Swaim had conducted the examination "using the *worker's compensation* disability rules as the guidelines for [the claimant's] examination." R. at 16 (emphasis added). "Whether or not the claimant is disabled for purposes of receiving worker's compensation benefits has no bearing on whether the claimant is disabled pursuant to social security regulations." R. at 16. Thus, the ALJ properly discounted Dr. Swaim's opinion—given in the context of a worker's compensation claim—that Plaintiff could perform light work, finding that under the social security regulations Plaintiff was limited to sedentary work.

**D.     The ALJ properly evaluated the evidence concerning the severity of Plaintiff's pain.**

Plaintiff further argues that the RFC is not based on substantial evidence of record because the ALJ improperly evaluated the objective evidence concerning the severity of her pain and discounted her testimony regarding her symptoms.

The question here is not whether Plaintiff experiences pain, but whether the pain is sufficiently severe that it prevents her from performing substantial gainful activity. *Hogan v. Apfel*, 239 F.3d 958, 961 (8th Cir. 2001). The ALJ recognized that Plaintiff's impairments caused her some pain, but found Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms were not fully credible." R. at 16.

The ALJ rightly found that the objective medical evidence did not support Plaintiff's subjective allegations of disabling pain. Plaintiff's claimed disability onset date coincides with an on-the-job back injury she suffered in December 2009. R. at 15, 381. Two days after this injury, Dr. Stephen L. Hawkins, M.D. examined Plaintiff and found no objective medical evidence of a disabling injury: Plaintiff's straight leg raise test was negative, she had normal abduction of the hips, and she had only mild tenderness of the lower lumbar spine. R. at 198. Plaintiff also reported experiencing only "mild" lower back pain, with no numbness or tingling. R. at 198.

Subsequent physical examinations in later weeks produced similar findings. R. at 15, 184. Although a magnetic resonance imaging ("MRI") scan of Plaintiff's lumbar spine revealed disc protrusions at multiple levels as well as stenosis, the level of stenosis at L4-L5 was described as "mild," and the L5-S1 nerve root was normal. R. at 15-16, 194-95. The examining physician reading the MRI, Dr. Sunghoon Lee, M.D., concluded there was no "significant neural compression with relation to any of these disc bulges" and "no focal pain generator can be identified." R. at 15, 184. Two follow-up examinations performed by Dr. Hawkins in February

of 2010 also produced no objective evidence of a disabling injury. Finally, Dr. Swaim's May 3, 2010 evaluation confirmed that there was no objective evidence of a disabling injury. Thus, the ALJ properly considered the objective medical evidence in considering Plaintiff's claim of debilitating physical symptoms.

There is also no merit to Plaintiff's claim that the ALJ improperly discounted her credibility. As a threshold matter, credibility questions concerning a plaintiff's subjective testimony are "primarily for the ALJ to decide, not the courts." *Baldwin v. Barnhart*, 349 F.3d 549, 558 (8th Cir. 2003). In analyzing a claimant's subjective complaints of pain, the ALJ considers the entire record, including medical records; statements from the plaintiff and third parties; the claimant's daily activities; the duration, frequency and intensity of pain; the dosage, effectiveness, and side effects of medication; precipitating and aggravating factors; and functional restrictions. 20 C.F.R. § 404.1529; *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984).

The ALJ considered these factors and found they weighed against her credibility. First, the ALJ found Plaintiff's statement that it was painful to fix her hair inconsistent with other evidence on the record. R. at 17. This allegation was not substantiated by Plaintiff's medical records insofar as she rarely mentioned any problems with her arms or shoulders. This allegation was also inconsistent with Dr. Dale's observation that Plaintiff's extremities were "normal." R. at 17, 148, 398.

Second, the ALJ noted Plaintiff did not have any limitations with respect to her activities of daily living. The ALJ observed Plaintiff was the primary caregiver for four children, all of whom were under 18 years-old, and that she attended to their activities of daily living, including cooking, cleaning, laundry, shopping, and driving. R. at 13, 17, 30, 147-150. She also attended her children's sporting events, watched television, and read. R. at 17, 151. The ALJ found that

9

Plaintiff's ability to perform those activities was inconsistent with her overall allegations of disabling symptoms, and particularly with her statement that she "hurts all the time" and cannot do anything for more than 10 minutes due to pain. R. at 17, 31, 169. While a claimant need not be bedridden to be disabled, the ALJ appropriately considered the evidence of Plaintiff's daily living activities as part of his overall analysis of Plaintiff's allegations of disabling limitations. *Medhaug v. Astrue*, 578 F.3d 805, 817 (8th Cir. 2009).

Finally, the ALJ correctly observed that Plaintiff responded well to some medical treatments. R. at 17. For example, Plaintiff reported that her left low lumbar symptoms had "improved significantly" following a left low lumbar and sacroiliac joint denervation procedure via radiofrequency ablation. R. 17, 524. And it is well-established that "[i]mpairments that are controllable or amenable to treatment do not support a finding of disability." *Davidson*, 578 F.3d at 846.

Thus, the ALJ considered the objective medical evidence, the inconsistency of Plaintiff's testimony with the objective evidence, her activities of daily living, and her treatment history in assessing the credibility of her subjective complaints. Because the ALJ articulated his reasons for discrediting Plaintiff's subjective complaints and these reasons are supported by the record, the ALJ's decision is affirmed. *Hamilton v. Astrue*, 518 F.3d 607, 613 (8th Cir. 2008).

## Conclusion

After careful examination of the record, the Court finds the Commissioner's determination is supported by substantial evidence on the record. Accordingly, the Commissioner's decision is AFFIRMED.

**IT IS SO ORDERED.**

Date:   May 22, 2013                     /s/ Greg Kays
                                         GREG KAYS, JUDGE
                                         UNITED STATES DISTRICT COURT